UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID PANGBORN, | No. 2:23-cv-2976 KJN P |
| Plaintiff, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| C/O PETERSON, et al., | |
| Defendants. | |

Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983. On December 20, 2023, defendants Peterson, Andrichuk, Ma, McDonald, Strong and Lynch removed this action from state court. (ECF No. 1.)

On January 26, 2024, the court dismissed plaintiff's amended complaint with leave to file a second amended complaint. (ECF No. 7.) The court ordered that defendants were not required to respond to the second amended complaint until ordered by the court. (Id.)

On March 18, 2024, plaintiff filed a second amended complaint. (ECF No. 12.) The court screens the second amended complaint herein.

Screening Standards

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner raised claims that are legally

1

1  "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek
2  monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).
3        A claim is legally frivolous when it lacks an arguable basis either in law or in fact.
4  Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th
5  Cir. 1984).  The court may, therefore, dismiss a claim as frivolous when it is based on an
6  indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,
7  490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully
8  pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th
9  Cir. 1989), superseded by statute as stated in Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir.
10 2000) ("[A] judge may dismiss [in forma pauperis] claims which are based on indisputably
11 meritless legal theories or whose factual contentions are clearly baseless."); Franklin, 745 F.2d at
12 1227.
13       Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain
14 statement of the claim showing that the pleader is entitled to relief,' in order to 'give the
15 defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic
16 Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).
17 In order to survive dismissal for failure to state a claim, a complaint must contain more than "a
18 formulaic recitation of the elements of a cause of action;" it must contain factual allegations
19 sufficient "to raise a right to relief above the speculative level."  Bell Atlantic, 550 U.S. at 555.
20 However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the
21 defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Erickson v.
22 Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic, 550 U.S. at 555, citations and internal
23 quotations marks omitted).  In reviewing a complaint under this standard, the court must accept as
24 true the allegations of the complaint in question, Erickson, 551 U.S. at 93, and construe the
25 pleading in the light most favorable to the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236
26 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984).
27 ////
28 ////

Discussion

Named as defendants in the second amended complaint are Correctional Officers Peterson, Williams and McDonald, Clinician Strong, Warden Lynch, Dr. Ma and Director of the California Department of Corrections and Rehabilitation ("CDCR"). The alleged deprivations occurred at California State Prison-Sacramento ("CSP-Sac"). Plaintiff's second amended complaint contains three claims for relief.

*Claim One*

Plaintiff alleges that on September 21, 2022, at around 10:00 a.m., he told Sergeant Grove and defendant Peterson that inmate Robertson threw a gray bag containing contraband to another inmate. Correctional officers apprehended inmate Robertson. At around 10:15 a.m., defendant Peterson said to plaintiff, "Why don't you stop snitching on me with your 602s." Plaintiff alleges that about 12 inmates heard defendant Peterson make this statement. Plaintiff alleges that defendant Peterson put plaintiff's life in danger by making this statement in front of other inmates.

Plaintiff alleges that defendant Peterson then said to inmate Alvarez, "Hey Shadow, you need to be careful, it's [plaintiff] who told me and the Sergeant that Country threw that stuff over the fence. I know you hate snitches so now you know [plaintiff] is a snitch." Plaintiff alleges that inmate Robertson's aka is Country. Plaintiff alleges that inmate Alvarez is known by prison staff and inmates to have killed an inmate at CSP-Sac who was a known snitch. Plaintiff alleges that at around 10:23 a.m., defendant Peterson said to inmate Robertson, "Hey, your boy [plaintiff] told me you threw the gray bag and is why you got slammed." Inmate Robertson then yelled, "Hey Huera, you're a fucking rat and when I see you again I'm going to blast you." Plaintiff's aka is Huera. Plaintiff alleges that at around 10:23 a.m., defendant Peterson walked by plaintiff's cage and said, "This should teach you to stop 602ing me."

Plaintiff alleges that defendant Williams was present when defendant Peterson made the statements to inmates Alvarez, Robertson and plaintiff. Defendant Williams smiled, laughed and nodded his head.

////

3

Plaintiff alleges that he requested protection from his enemies, i.e., the inmates who heard defendant Peterson call plaintiff a snitch, from defendant Lynch, verbally and in writing, on September 23, 2022, September 28, 2022, and October 4, 2022. Plaintiff requested that all the inmates who heard defendant Peterson call him a snitch be placed on plaintiff's enemy list. Plaintiff alleges that defendant Lynch denied this request.

Plaintiff's claim that defendant Peterson accused plaintiff of snitching on other inmates in front of other inmates in retaliation for filing grievances states potentially colorable Eighth Amendment and retaliation claims. See Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989).

Plaintiff also appears to claim that defendant Peterson violated plaintiff's constitutional rights by accusing plaintiff of snitching on defendant Peterson in front of other inmates. This court is not aware of any authority holding that a prison official who accuses an inmate of snitching on prison officials in front of inmates violates the Constitution. Accordingly, to the extent plaintiff raises such a claim, this court recommends dismissal of this claim as legally frivolous.

Plaintiff alleges that defendant Williams smiled, laughed and nodded his head on the two occasions defendant Peterson accused plaintiff of snitching on inmate Robertson. Plaintiff may be claiming that defendant Williams conspired with defendant Peterson to violate plaintiff's constitutional rights. For the reasons stated herein, this court finds that plaintiff fails to state a potentially colorable conspiracy claim against defendant Williams.

To state a claim for conspiracy under section 1983, plaintiff must show the existence of an agreement or meeting of the minds to violate constitutional rights, Avalos v. Baca, 596 F.3d 583, 592 (9th Cir. 2010); Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001), and that an "actual deprivation of his constitutional rights resulted from the alleged conspiracy," Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steelworkers of Am. v. Phelps Dodge

Corp., 865 F.2d 1539, 1541 (9th Cir.1989)).

While plaintiff pleads facts suggesting that defendant Williams approved of defendant Peterson's alleged statements calling plaintiff a snitch, plaintiff pleads no facts demonstrating that defendants Williams and Peterson actually conspired to violate plaintiff's constitutional rights. Plaintiff pleads no facts demonstrating that defendants Williams and Peterson had a meeting of the minds to retaliate against plaintiff for filing grievances or to violate plaintiff's Eighth Amendment rights. As alleged, it appears that defendant Peterson's alleged statements calling plaintiff a snitch were spontaneous, and not based on a conspiracy. Accordingly, this court finds that plaintiff fails to state a potentially colorable conspiracy claim against defendant Williams. Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (vague and conclusory allegations of officials participation in civil rights violations are not sufficient).

Plaintiff alleges that defendant Lynch denied plaintiff's written and verbal requests for the inmates who heard defendant Peterson accuse plaintiff of snitching on inmate Robertson to be placed on plaintiff's enemy list. These allegations state a potentially colorable Eighth Amendment claim for relief.

*Claim Two*

Plaintiff alleges that on fifteen occasions in 2022, defendants Peterson, Williams, McDonald and Strong denied plaintiff access to mental health group and one-on-one therapy because plaintiff was a waist chain, wheelchair and walker inmate. Plaintiff alleges that defendants falsified records to state that plaintiff actually attended therapy or falsely wrote that plaintiff refused to attend therapy. Plaintiff alleges that defendants Peterson, Williams and McDonald told him that, "You cannot use your (DME ADA) approved devices. If you do not walk then you're not going to get mental health treatment." Plaintiff alleges that he could not walk without his DME approved devices.

Plaintiff alleges that out of retaliation, "they" would pick plaintiff up last and return him first from group therapy, resulting in plaintiff receiving 30 to 40 minutes less therapy. Plaintiff alleges that defendants Peterson, Williams and McDonald stated that plaintiff was "being given less time because he was a cripple" and in retaliation for the constant 602s plaintiff filed against

them.

Plaintiff alleges that after he filed another grievance, on October 13, 2022, defendant Peterson had plaintiff taken to the treatment center by wheelchair. When they arrived, defendant Peterson said, "you get a non-ADA cage. Get out of your wheelchair and crawl on your knees into this non-ADA cage in front of every[one] if you want group." Plaintiff crawled on his knees, hurting his back. Plaintiff told defendant Peterson and the group instructor that he (plaintiff) was in pain but he wanted his group therapy. The group instructor told defendant Peterson that he could not make plaintiff be in a non-ADA cage without his wheelchair. Defendant Peterson had plaintiff crawl back to his wheelchair, causing plaintiff to suffer so much pain that plaintiff started to cry. Defendant Peterson took plaintiff to an ADA accessible cage where no group therapy was being held.

Defendant Peterson returned about 40 minutes later and said, "This will teach you to stop filing 602s against me." Plaintiff asked to speak to his clinician. After defendant Strong arrived, plaintiff began to explain his mental health concerns. Defendant Strong interrupted and stated, "Shut up. I don't want to hear you complaining. Correctional Officer Peterson is my friend so I will work with him and back up any action he takes right or wrong. Stop 602ing everyone and prison will be better for you. I will be working with him and others on documenting actions to combat your attempts at civil litigation …you will not win."

Plaintiff's allegations that defendants Peterson, Williams and McDonald denied him access to therapy based on his disability states a potentially colorable claim pursuant to the Americans with Disabilities Act ("ADA"). Plaintiff's allegations that defendant Peterson forced plaintiff to crawl on his knees, causing plaintiff back pain, states a potentially colorable Eighth Amendment claim. Plaintiff's allegations that defendants Peterson, Williams and McDonald denied him access to therapy in retaliation for filing grievances states a potentially colorable retaliation claim. Plaintiff's allegations that defendant Strong told him to stop 602ing everyone and that she would work with defendant Peterson to combat plaintiff's attempts at civil litigation states a potentially colorable retaliation claim.

////

Plaintiff also alleges that defendant Strong denied him access to therapy in violation of the ADA.  However, plaintiff's second amended complaint contains no specific allegations against defendant Strong regarding actions taken by defendant Strong to deny plaintiff access to therapy based on his disability.  Plaintiff's vague and conclusory allegations that defendant Strong denied him access to therapy are not sufficient to state a potentially colorable ADA claim against defendant Strong.  Accordingly, this claim against defendant Strong should be dismissed.

*Claim Three*

Plaintiff alleges that on August 25, 2022, at around 8:42 a.m., defendant Williams came to plaintiff's cell door and stated that, per defendant Peterson, plaintiff was not going to get group because plaintiff was hostile and loud.  Correctional Officers Rios and Karshner contacted Lieutenant Vitale and told him that was not true and that plaintiff wanted to attend group.  Lieutenant Vitale contacted the EOP Treatment Center and requested that plaintiff be allowed to attend group.

About 40 minutes later, defendants Peterson and Williams came to plaintiff's cell door and stated, "The next time we pull you out for escort, we're going to slam your face into the ground and stomp on your head."  Plaintiff suffered a panic attack as a result of these comments.  Correctional Officers Rios and Karshner escorted plaintiff to group in the EOP Treatment Center.  After group, defendants Williams and Peterson shackled plaintiff.  While escorting plaintiff back to his cell, defendants shoved plaintiff into a closet, slammed plaintiff up against a wall and slapped plaintiff in his face and head.  Plaintiff did not resist and was not combative.  Defendants punched plaintiff with closed fists in his ribs and kicked him in the shins, legs and thighs.  Defendant Peterson told plaintiff that if he told Lieutenant Vitale, Correctional Officer Rios or filed a 602, they would kill plaintiff.

The allegations set forth above state a potentially colorable claim for excessive force against defendants Williams and Peterson.

This court also finds that plaintiff's claims alleging that defendants Peterson and Williams threatened to physically assault plaintiff the next time they escorted him and that defendant Peterson threatened to kill plaintiff if he reported the excessive force state potentially colorable

7

Eighth Amendment claims.  Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996) (comments that are unusually gross for the prison setting and that are calculated to cause psychological damage can violate the Eighth Amendment).

In claim three, plaintiff also alleges that on November 14, 2022, defendant Strong instructed correctional officers to remove plaintiff's family photos to help with plaintiff's mental health.  Plaintiff alleges that there is no policy, rule, procedure or level of care that allows removal of family photos.  Plaintiff alleges that defendant Strong ordered the removal of plaintiff's family photos in retaliation for plaintiff filing grievances against her friend, defendant Peterson.  Plaintiff alleges that defendant Peterson later called out to him, "When you see your missing property and family photos, know that is [a] consequence of 602ing me."  Defendant Strong allegedly then said, "And 602ing me…your mental health will be better now that your photos are gone."

The allegations set forth above state potentially colorable retaliation claims against defendants Strong and Peterson.

In claim three, plaintiff also alleges that from September 20, 2022, through October 19, 2022, defendant Ma told plaintiff "face to face" that he was denying plaintiff treatment and pain management in retaliation for "602s and California Medical Board…"  Plaintiff alleges that the denial of pain management caused plaintiff to suffer severe pain and the loss of mobility.  Plaintiff alleges that he was unable to use the phone, take showers, get mail or meals, and plaintiff urinated in his bed on several occasions.  Plaintiff alleges that defendant Ma punished plaintiff for filing complaints on him.

The allegations set forth above state potentially colorable claims against defendant Ma for retaliation and denial of adequate medical care in violation of the Eighth Amendment.

*Defendant CDCR Director*

The second amended complaint contains no claims against defendant CDCR Director.

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution .

8

. . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978) ("Congress did not intend § 1983 liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976) (no affirmative link between the incidents of police misconduct and the adoption of any plan or policy demonstrating their authorization or approval of such misconduct). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979) (no liability where there is no allegation of personal participation); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978) (no liability where there is no evidence of personal participation), cert. denied, 442 U.S. 941 (1979). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (complaint devoid of specific factual allegations of personal participation is insufficient).

As stated above, the second amended complaint contains no claims against defendant CDCR Director. Accordingly, all claims against defendant CDCR Director should be dismissed.

Conclusion

The court docket reflects that CDCR and Andrichuk are defendants. Plaintiff did not name CDCR and Andrichuk as defendants in the second amended complaint. Accordingly, this court herein directs the Clerk of the Court to amend court records to reflect that CDCR and

Andrichuk are no longer defendants in this action.

For the reasons discussed above, the following claims in the second amended complaint are potentially colorable:  1) claim one against defendant Peterson alleging Eighth Amendment and retaliation claims; 2) claim one against defendant Lynch alleging Eighth Amendment claim; 3) claim two against defendants Peterson, Williams and McDonald alleging violation of the ADA; 4) claim two against defendant Peterson alleging Eighth Amendment claim based on allegations that he made plaintiff crawl on his knees; 5) claim two against defendants Peterson, William, McDonald and Strong alleging retaliation; 6) claim three against defendants Peterson and Williams alleging Eighth Amendment claim based on excessive force; 7) claim three against defendants Peterson and Williams alleging Eighth Amendment claims based on verbal threats; 8) claim three against defendants Peterson and Strong alleging retaliation; and 9) claim three against defendant Ma alleging retaliation and Eighth Amendment claims.

Defendants Peterson, Lynch, McDonald, Strong and Ma are ordered to file a response to the potentially colorable claims in the second amended complaint within thirty days of the date of this order.  Defendant Williams has not been served.  Accordingly, the court separately orders service of defendant Williams.

Plaintiff has been granted adequate opportunities to amend his complaint.  Because it is clear that plaintiff cannot cure the pleading defects as to those claims found not potentially colorable above, this court herein recommends that those claims be dismissed.  Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012) ("A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not cured by amendment.'") (quoting Schucker v. Rockwood, 846 F.2d 1202, 1203-04 (9th Cir. 1998) (per curiam)).

Plaintiff's Motion for Legal Supplies  (ECF No. 13)

On March 22, 2024, plaintiff filed a motion requesting a court order granting him access to his legal supplies or, in the alternative, for plaintiff to be allowed to submit an order to purchase legal supplies.  For the reasons stated herein, defendants are ordered to respond to this motion.

Plaintiff alleges that he had to trade kosher meals to get pens, paper, and envelopes in order to litigate his cases. Plaintiff alleges that he did not eat breakfast and lunch for eleven days because staff at CSP-Sac denied plaintiff access to legal supplies. Plaintiff alleges that he placed an order with Walkenhorst's to buy his own legal supplies. Plaintiff alleges that prison officials at CSP-Sac pressured Walkenhorst's not to process plaintiff's request and to keep plaintiff's money. Plaintiff alleges that he is not allowed to get packages due to his "Group O" status.

Attached to plaintiff's pending motion is a letter addressed to plaintiff from Walkenhorst's, dated March 12, 2024. The letter states that Walkenhorst's is unable to process plaintiff's order "due to your ongoing lawsuit with the CDCR. While we are not affiliated with CDCR, we do have to work with them in order to ship to facilities in California. We do not make any decisions as to what is or is not considered a special purchase item, these decisions are left to the CDCR." (ECF No. 13 at 4.) The letter advised plaintiff to resubmit his request as a quarterly package or with items that are special purchase items. (Id.) As stated above, plaintiff alleges that he is not allowed packages due to his "Group O" status.

A form from Walkenhorst's attached to the motion, dated February 27, 2024, indicates that plaintiff's request to purchase items including manilla envelopes, writing pads and various pens was denied because they were not allowed as a special purchase, per CDCR rules. (Id. at 5.)

This court is concerned that plaintiff may be unable to prosecute this action if he is denied access to legal supplies, as alleged in the pending motion. Accordingly, within fourteen days of the date of this order, defendants shall file a status report addressing plaintiff's motion alleging that he is being denied access to legal supplies.

Accordingly, IT IS HEREBY ORDERED that:

1. The Clerk of the Court shall amend court records to reflect that defendants Andrichuk and CDCR are no longer defendants in this action;
2. Within thirty days of the date of this order, defendants Peterson, Lynch, McDonald, Strong and Ma shall file a response to the potentially colorable claims raised in the second amended complaint;
3. The Clerk of the Court shall assign a district judge to this action;

4. Within fourteen days of the date of this order, defendants shall file a response to plaintiff's motion alleging that he is being denied access to legal supplies; and

IT IS HEREBY RECOMMENDED that the following claims raised in the second amended complaint be dismissed for failing to state potentially colorable claims for relief: 1) all claims against defendant CDCR Director; 2) claim one alleging that defendant Peterson violated the Eighth Amendment by accusing plaintiff of snitching on defendant Peterson; 3) claim one alleging conspiracy claim against defendant Williams; and 4) claim two alleging ADA claim against defendant Strong.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, plaintiff may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: March 28, 2024

/s/ Carolyn K. Delaney
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

Pang2976.ame(2)

12